# CHARLESTON.

STATE EX REL. GRAHAM v. CITY OF HINTON *et als.*

Submitted November 16, 1915., Decided November 30, 1915.

1. MUNICIPAL CORPORATIONS—*Statutes—Enactment—Amendment to Charter—Validity.*

An act amending the charter of a city is not void for the following reasons:

(a) Because it provides that the common council, then in office, shall ''within ten days from the time this act takes effect, call a special election'' for the purpose of electing the new officers provided for in the act, and then fixes a date for holding same, which happens to be a date prior to the time the act took effect. In such case it was the duty of the council to call the election within ten days after the act took effect, and fix a date for holding same within a reasonable time thereafter.

(b) Because no notice of the application to the legislature for the amendment of the charter was published, as provided in Sec. 10, Ch. 12, Code 1913. (p. 268).

2. MANDAMUS—*Right to Remedy—Performance of Official Duties—City Council.*

A city council may be compelled by mandamus to perform a duty prescribed by the city charter, involving no discretion. (p. 269).

Original mandamus by the State, on the relation of L. P. Graham, against the City of Hinton and others.

*Writ awarded.*

*E. B. Dyer* and *Morgan Owen,* for petitioner.

*T. N. Read,* for respondents.

WILLIAMS, JUDGE:

By an act passed February 20, 1915, the legislature amended and re-enacted the charter of the city of Hinton, changing its government from the usual form administered by a mayor and common council, to a government to be administered by a bi-partisan commission consisting of four members, styled the "Board of Affairs of the City of Hinton," and a common council consisting of two members to be elected from each ward. Sec. 97 of the Act provides that the mayor, councilmen and all appointive officers, holding office under the old charter shall continue in their respective offices until their successors shall have been elected, qualified and entered on the discharge of their duties as prescribed in the new act, and during such continuance in office shall exercise their rights, powers and duties within the territory of Hinton as prescribed by its old charter.

Sec. 98 of the new act, among other things, provides as follows: "The common council of the city of Hinton as constituted before this act becomes effective, shall within ten days after this act takes effect, call a special election to be held on the first Tuesday in April, one thousand nine hundred and fifteen, for the election of the commissioners and members of the common council of the city of Hinton, as herein provided, and said nominations shall be made and said special election shall be conducted and held in the manner herein set forth and provided for regular elections by the council then in office in said city of Hinton, and in all manner according to the provisions of the laws of the state relating to such matters and not in conflict with the provisions of this act."

The draughtsman of the act evidently prepared it with reference to its being made effective from its passage, but it did not take effect until ninety days thereafter, which was May 21, 1915, more than a month after the time fixed by Sec. 98 for the holding of the first election. Sec. 101 expressly provides "all other acts and parts of acts coming within the purview of this act and inconsistent herewith are hereby repealed."

L. P. Graham, a citizen, voter and taxpayer of the city, applied to the mayor and common council to call an election,

as provided for in the new charter, and fix the time for holding the same, but they refused to comply with his request and, ignoring the new charter, ordered an election to be held under the old charter on the 7th of December, 1915, for the election of a mayor and all other officers therein provided for, and named the voting places and appointed commissioners to hold the election.

On the petition of said L. P. Graham, an alternative writ of mandamus was awarded by this court, returnable on the 16th of November, 1915, commanding the mayor and councilmen, respectively, by name, to hold a council meeting not later than November 15, 1915, and call an election to be held in said city of Hinton not later than the 18th of January, 1916, for the election of all officers provided for by the aforesaid act of the legislature passed on the 20th of February, 1915, amending and re-enacting the charter of said city, or to appear before this court in Charleston on the aforesaid return day of the writ and show cause, if any they can, why they have not obeyed the same.

Respondents answered and also moved to quash the writ. Their answer admits all the facts alleged in the alternative writ, but challenges the constitutionality of the new charter on the following grounds:

(1) Because the parties intending to apply to the legislature for a new charter did not publish notice of such application for four weeks in a newspaper printed in said city of Hinton, as provided in Sec. 10, Ch. 12, Code 1913. This statute has no greater force than a rule of the legislature. The legislature had the power to violate it if it saw fit. The Constitution does not require such notice to be published; and one legislature has not the power to adopt a rule, or pass a law, which will bind subsequent legislatures. If such power existed, the time might soon arrive when one legislature would assume to pass all the laws it considered needful and make them binding for all time to come.

It is averred that, while the act was on its second reading in the House, Honorable J. W. Alderson, Delegate from the County of Summers, protested in writing against the passage of the act, on the ground above stated, and had his protest spread upon the minutes of the House. This was, no doubt,

the proper method of preserving the evidence of his protest, but, as there was no lack of jurisdiction in the legislature to pass the act over his protest, it had no more effect than a vote against its passage. Many other members of the legislature voted against the act, but not enough of them to defeat its passage.

(2)   They aver that it was impossible for them to call an election to be held on the first Tuesday in April, 1915, as provided in Sec. 98 of the Act, because that time had passed before the act took effect, and, therefore, they say they were excused from calling an election to be held at any other time. They deny that it was their duty under the act to call an election to be held under the new charter and to fix a time for holding the same, different from the time named in the act. They admit that relator demanded that they call an election and fix a time for holding it, and that they refused to do so, but they deny that they thereby violated any duty. They also admit that they called the regular and usual election for mayor, recorder and members of the council, to be held on the 7th of December, 1915, in accordance with the old charter. They aver that no election of officers provided for in the new charter, could be lawfully held before the second Tuesday in December, 1916, as provided for in Sec. 33 of the new charter. This section provides for the holding of regular biennial elections, whereas section 98 provides for holding the first special election for the purpose of putting the new charter into operation at the moment the old one expires thereby preventing a hiatus in the municipal government.

(3)   They aver the act is unconstitutional because Sec. 35 of Art. 9, excludes many of the citizens of the city from the right to hold municipal office. After prescribing the qualifications for the office of commissioners and members of the common council, that section then provides as follows: "*Provided,* no person shall be eligible to the said office of commissioner who is a stockholder, employe, or in any way financially interested in any public service corporation which may be operating or doing business under and by authority of any franchise granted by the city of Hinton."

It does not appear that any, citizens who are excluded from office by that section are here complaining. That provision of

the statute is severable from the rest of it; and, even if it is unconstitutional, it would not render void other parts of the new charter. We do not say whether Sec. 35, Art. 9, of the new charter is unconstitutional or not, as that question is not properly presented. It will be time enough to decide it when someone who is thereby excluded from holding office complains.

The matters averred in the answer do not show a legal excuse for disobeying the alternative writ. Sec. 98 required the common council to call a special election within ten days after the act took effect. It took effect 21st of May, 1915, and hence the special election should have been called not later than the 31st of May. The fact that the legislature itself fixed an impossible date for holding the election did not render the act void, or excuse the city council from calling an election within the time prescribed, and fixing a different day from that named in the act for holding it. They had no right to continue themselves in office by refusing to call the special election for the new set of officers provided for in the new act. *State ex rel. Heironimus* v. *Town of Davis et al.,* 76 W. Va. 587, 85 S. E. 779. The special election was provided for as a means of putting the new charter into operation from the time it took effect. The taking effect of the new charter abrogated the old one. The act provides for regular biennial elections to be held on the second Tuesday of December, the first of such regular elections to be held on second Tuesday of December, 1916; and the first set of officers to be elected at the special election will; therefore, hold until that time.

The writ will be awarded.

*Writ awarded.*